By the Court. Sandford, J.
The defendant contends that this court has no jurisdiction, because the lien claimed by Crow-ell and his associates, is for salvage of a cargo, derelict at sea; and th.e jurisdiction is exclusively in the court of admiralty. It is not denied that in England, the courts of common law have concurrent jurisdiction with the admiralty, courts, in determining questions, of salvage; but it is claimed to be otherwise here, by force of the constitution of the United States and the Judiciary Act of 1789.
In determining this point, the relative convenience of the respective tribunals is not important. Jurisdiction depends on other and higher considerations.
Section nine of the Judiciary Act of Congress, which declares the authority of the district courts of the United States, clothes them with “ exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, including-all seizures under laws of imposts,” &c., 11 saving to suitors, in all cases, the right *388 of a common law remedy, where the common law is competent to give it.”
It is difficult to perceive why, under this important exception; when we had in this state in full operation, the same common law that governed in England, and like courts of law and equity,- administering the same remedies, and in the same forms, of proceeding, which were administered and used by the courts of law and equity there ; the courts of this state did not retain precisely the same jurisdiction which the courts of common law in England exercised, concurrently with the admiralty court, prior to the American Revolution.
We are however referred to the recent decision of the supreme court in this district, in Frith v. Crowell, reversing an order of one of the justices of that court, appointing a receiver of goods taken by the same parties, at the same time, and under the same circumstances, with those in question here. That court refused to entertain jurisdiction, for the reasons, that it is not a proper tribunal to try a question of salvage, its forms.of proceeding are inadequately adapted to it, it has never exercised such a jurisdiction, and the court of admiralty is the proper tribunal for that purpose.
This decision is not placed distinctly on the ground urged at the bar, that the admiralty court has exclusive cognizance of the matter; but rather on the novelty of the appeal to the supreme court,- and its inadequate machinery to deal advantageously with such a case.
After carefully considering the question, we are constrained to differ from that learned tribunal, which we never can do without regret. And this unfortunate disagreement impels us to give our views more at large than we are wont on interlocutory applications. “
The constitution of the United States, does not determine the point. It authorizes congress to create inferior courts and confer on them admiralty jurisdiction. Until congress exercised the authority, there was no interference with the state courts; and when the U. S. district courts were created, and their cognizance defined, their jurisdiction became exclusive, only so far as it was made exclusive by the act of congress. In all other cases *389 where the courts of common law provided an adequate remedy before; it seems to be plain that the judiciary act, at most, gave only a concurrent jurisdiction to the admiralty.
The great argument against the jurisdiction of this court, to decide a question of salvage, was founded upon the decisions respecting prize causes. As to this argument, the common law courts in England, never had any jurisdiction of questions of prize of war. This was most elaborately adjudged in the great case of Le Caux v. Eden, Dougl. 694; and it was there shown to have been the settled law for more than a century. Of course there could be no pretence that our state courts had a maritime jurisdiction, which the English common law courts had not; and it has never been claimed. In the case of Hallett v. Novion, 14 Johns. 273, (reversed in 16 ibid, 327,) the supreme court maintained the suit, as establishing merely a marine tort, against the opinions of Spencer and Yates, justices, that it was a case of prize; and the court of last resort, reversed the judgment, on the sole ground, that the captors claimed to have seized the vessel as prize of war, which involved a question not determinable in a count of common law.
The jurisdiction in cases of prize, rests upon the law of nations, and is peculiar, in England, as well as in the United States. In England the admiralty court, acting upon those questions, is called a prize court; when acting upon all others it is an instance court. It not only has different names, but the two courts differed essentially; because the appeal was to a different tribunal in the instance court, from that provided in the prize court. In the latter, the questions arising were political; in the former, they were the ordinary questions of municipal and commercial law.
Moreover, the prize court only exists in England by force of a commission issued on the breaking out of hostilities ; and a new commission is requisite to provide for each new war. The judge of the instance court of admiralty, it is true, is uniformly clothed with the prize jurisdiction under such commissions; but there is no legal obstacle to its being conferred on another and distinct judge. (See Lindo v. Rodney, Dougl. 623.) This being the constitution of the prize court of admiralty in En *390 gland, it was stoutly denied, in the origin of our constitutional government, that the act of congress creating the district courts conferred any jurisdiction upon them in cases of prize. It was not till after conflicting decisions on the point, in two district and two circuit courts, that it was finally decided by the supreme court of the United States, that the district courts possessed the powers of a prize .court of admiralty. (Glass v. The Schooner Betsey, 3. Dallas, 6 ; and see 3 ibid. 54.)
Thus it will be seen .that, on the only subject, which in England was beyond and exclusive of the jurisdiction of the ordinary courts of law and equity; it was not until after serious doubts and contestation, that our courts of admiralty were held to possess jurisdiction, by a decision of the national court of last resort.
There was subsequently a struggle relative to the instance powers of the district courts of admiralty, touching seizures for forfeitures provided by acts of congress, in laws other than those regulating trade, imposts and navigation; but the jurisdiction was fully maintained.
Next came the effort to bring all marine contracts within the admiralty powers .of the district courts. To the extent which the English admiralty took cognizance of such contracts, there' was no difficulty; but the attempt to exercise in our courts of admiralty, the large powers which were claimed for that tribunal several centuries ago, and which were so zealously and súccessfully resisted by the common law judges in England, was inflexibly opposed in the supreme court of the United States. The same is true of the subsequent claim of jurisdiction in the district courts, in cases of marine torts occurring on our inland waters, and within the limits of counties.
Mr. Justice Story contended for the enlarged jurisdiction for enforcing marine contracts, in De Lorio v. Boit, (2 Gall. 398,) and Peele v. The Merchants Insurance Co., (3 Mason, 27;) while the opposite view Was maintained with equal zeal, by Mr. Justice Johnson, in Ramsay v. Allegre, (12 Wheat. 614.) In Bains v. The Schooner James and Catherine, (1 Baldw. C. C. 544,) Judge Baldwin delivered an able judgment against the existence of jurisdiction in the district courts, to enfórce con *391 tracts regulated by the common law, though made concerning maritime subjects. The discussion was renewed in the Merchants Bank v. The N. J. Steam Nav. Co., (6 Howard’s Rep. 344,) no longer ago than last year; when Mr. Justice Daniel contended against the jurisdiction, in a powerful and elaborate opinion; and it may be considered an open question at this moment, whether our courts of admiralty have, as a concurrent jurisdiction, cognizance of. any class of marine contracts, which were not, at the revolution, within the jurisdiction of the English admiralty.
In Waring v. Clarke, (5 Howard, 441,) a majority of the supreme court of the United States, decided that the district court in admiralty could entertain a libel as for a marine tort, for damages sustained by the collision of two steamboats on the Mississippi river. Judge Wyne delivered the prevailing opinion, which was met by a full and very, able dissenting opinion from Judge Woodbury, in which two of his associates concurred. The great point of the argument in the majority opinion, was to show that the district court had concurrent jurisdiction of the tort, with the courts of common law.
In The American Insurance Co. v. Carter, (1 Peters’, 511, 546,) to which we were cited by the defendant’s counsel, Chief Justice Marshall says, the exercise of admiralty jurisdiction in the states, can only be in those courts which are established in pursuance of the third article of the constitution of the United States. This observation of the learned judge, has no application to the point before us, because he was not speaking of common law courts at all; and he was arguing to show, that the legislature of a territory might establish a salvage court, for the reason that such legislature combined the governmental powers of both the state and the general governments ; it being contended that the power conferred on congress by the constitution, to establish admiralty courts in the states, did not extend to the territories of the United States.
We were also referred to Brevoor v. The Ship Fair American, (1 Peters’ Admiralty Rep. 81,) and to a note, founded on that case, in Story’s Abbott on Shipping, 557. The case itself was a libel for salvage, and among other objections to the juris *392 diction of the court, it was shown that the ship had been delivered to the owners, the salvors could no longer proceed in rent,, and the lien was gone. Judge Peters upheld his jurisdiction, and decided that admiralty could proceed in personam for salvage ; also, that the lien was not gone. He said further, that no case is produced in a common law court of a suit for salvage on the high seas, and the reason for there being no such jurisdiction is, that the common law courts cannot proceed in rem. This, it will be observed, is not a decision; and the reason assigned, while it is inapplicable to courts of equity, does not apply to cases in the courts of law, where salvage comes in question incidentally.
We have thus briefly reviewed the history of maritime jurisdiction, under our national constitution, to show that it is essentially without change from the English system. The admiralty court is held to have the same powers as an instance and a prize court, that the same tribunal possesses there ; exclusive, as a prize court, and concurrent in its other jurisdiction, in all cases where the common law courts gave a competent remedy, and the admiralty was not made exclusive by law. The great struggle in the United States courts has been, to extend admiralty jurisdiction to cases which in England were exclusively confined to the courts of law and equity ; not to exclude from the concurrent jurisdiction here, any cases that were concurrent there.
We can find no reason for excluding questions of salvage ' from this concurrent authority, if parties choose to call for its exercise, and the cases are, in other respects, within the scope of our established jurisdiction. The authority in the English courts of common law was conceded, and many cases are reported where it was applied, both at law and in equity.
In this country we find one case, that of Blake v. Patten, (15 Maine R. 173,) where an action was maintained by a sailor against the master of a vessel, for his share of a salvage received by the latter. (And see Abbott on Shipping, by Story & Perkins, [556] 662.) The principle of Percival v. Hickey, (18 Johns. 291,) is decisive, although that was a marine tort, and not a salvage. A military salvage, arising upon a re-capture, is *393 a case of prize, (The Schooner Adeline, 9 Cranch, 244,) and does not affect the question.
Our conclusion on the case, as made by the complaint, was declared on a former occasion. (Cashmere v. Crowell, 1 Sandf. R. 715.) It exhibits a tort committed at sea on the plaintiff’s goods, commencing with an alleged salvage. The defence is a claim for salvage of the goods; not denying that they are the property of the plaintiff, or of some stranger, but claiming a lien for salvage services. The supreme court, in Frith v. Crowell, admit the general jurisdiction of a court of equity, to interfere to ascertain the extent of a lien, in aid of a party who must pay it before he can obtain possession of his property; and we suppose it is unquestionable.
This is a court of equity, and the plaintiff seeks to redeem his goods. But it is said the lien is a salvage claim, and this court has not the machinery properly to dispose of such a claim. Why not ? The court of chancery, to which all our forms of procedure are now assimilated, has ever used the same civil law forms, which distinguish admiralty proceedings j and in a vast number of cases, growing out of corporations, joint stock companies, whaling adventures, the administration of estates, and the like; have entertained suits far more complicated and involved, and requiring more parties, than any salvage case to be found in the books. The libel in admiralty is the bill in chancery. Both courts proceed in rem, and both make decrees affecting numerous parties who do not appear, and who have no actual notice of the proceedings.
Assuredly, we feel no disposition to invite into this court cases involving questions of salvage; but we cannot say with truth, that the court is inadequate to investigate them. In this suit, if the plaintiff’s motion be entertained, the course will be to place the property in the hands of a receiver; and, being perishable, he will be directed to sell it at once. The proceeds will remain in court until the claims can be determined. If there are not sufficient parties, the defect will be supplied ; and on a reference, either with further parties, or by a notice to all persons interested, such as is given in partition cases and admin *394 istration suits, the referee will proceed to investigate the claims of all persons entitled to share in the salvage.
The propriety of our entertaining jurisdiction is also questioned, and the declension of the district court to take cognizance is cited, as adjudging its impropriety. The decree of that court gives the reason of its course, which was, that the property was taken- by the salvage claimants on the British coast, within soundings, all the parties concerned were British subjects, and both ships were British vessels. The British Consul, interposing for unknown owners, made the objection to the court’s taking cognizance of the matter; and the court, holding that it could exercise a discretion, declined to proceed.
The facts which influenced the United States district court, do not confer any discretion upon us. The case before this court shows sufficiently to require its action, that the property which is now here, if actually salved, was wrongfully brought here ; and that parties who are foreigners and irresponsible, are seeking to carry it away, without any security to the owner that it will be taken to Great Britain, or to any country where he_ will ever hear of it again. He is willing to pay such salvage as the claimants ought to. have, and he desires to have his property protected till their claim can be ascertained.
If there were a suit pending in the admiralty court, we might and should decline jurisdiction ; but we have no right to refuse it, when required to act in a case within our proper cognizance, which is not in litigation elsewhere. If we err in our view of the jurisdiction of the common law courts, to decide upon salvage questions, we ought nevertheless to interfere for the protection of the plaintiffs property, until the question can be properly settled ; but we entertain no doubt on the principal point.
As to the objection that the plaintiff brought upon himself the necessity for the salvor’s removal of the goods, by opposing the proceeding in the district court; we find no sufficient evidence that he was an actor at all in that court. ' The British Consul interposed to protect the property belonging to subjects of his government, as he had a right to do ; but he could not, as Consul, receive restitution, or even obtain a decree to that *395 effect. (The Bello Corrunes, 6 Wheat. 152 ; The Antelope, 10 ibid. 66.)
This is not an action in the nature of the former action of replevin. It is more in the nature of a hill for redemption of chattels retained for a lien.
There must be a receiver appointed with the usual authority.