By the Court. Paine, J.
Although we cannot regard the declaration as setting up a claim for salvage, yet the plaintiff’s counsel on the argument attempted to sustain the referees’ report upon the ground that the plaintiff was entitled to compensation upon salvage principles. And although the report gives us no light as to the views of the referees in this respect, yet we are inclined to suppose from the amount reported by them, that they must have regarded it as a case of salvage. Did it clearly appear that the referees had so treated it, we should feel ourselves obliged to set aside their report upon that ground. .
The services rendered by Captain Sturgis have undoubtedly a resemblance, at least, to salvage services, and if presented for compensation to a court competent to grant it, would have been entitled to full consideration. But we think that a want of jurisdiction prevents this court from inquiring into their merits as salvage services.
Strange as it may seem, there is no instance which we are aware of, where the question has been raised, whether a court of common law has jurisdiction to award a salvage compensation. It is generally supposed that courts of common law have concurrent jurisdiction, in eases of salvage, as they have in many other cases with courts of admiralty; and undoubtedly there are one or two instances, where courts themselves have acted upon the supposition. How far it has been acted upon, however, and *457 whether to a sufficient extent to establish the jurisdiction, can only be learned from an examination of the cases and the weight of the objections to the jurisdiction.
Salvage, although applied by the Romans to cases coming under the jus-jyostlimmii, appears not to have attracted notice at an early period in modern times, except in cases of wrecks. The statute of 27 Edw. HI. ch. 13, is probably the earliest men? tion of salvage, which provides that goods coming to land shall be delivered to their owners on payment of sal/vage. The only remedy in use for its recovery, appears to have been a detention of the goods until it was paid; and this gave rise to a tender of the salvage, and an action of trover for the recovery of the goods, in case the tender was not. accepted and the goods delivered up. The courts of common law were then, as they are now, perfectly competent to administer this remedy; and we find several actions of trover in the books, where, if the tender was sufficient, the owner recovered his goods, if it was not, the salvor still retained them. The first of these cases reported, (although probably, in practice, others had occurred,) is that of Hartford v. Jones, 1 Ld. Raym. 393; S. C. 2 Salk. 654; 3 Ibid. 366. The remaining cases of this description to be found, are Baring v. Day, 8 East. R. 57; Sutton v. Buck, 2 Taunt. 302; Clark v. Chamberlain, 2 Mees. & Wels. 77.
This right to demand and receive one’s goods, upon paying the possessor of them his just claim for salvage, seems to be founded in necessity, and has always been permitted both by courts of common law and courts of admiralty. If the tender is sufficient, there ought to be no litigation, unless among those entitled to the salvage; and to this the owner of the goods need not be a party. He has been able, as every one ought to be, by doing all that justice demanded of him, to extricate himself, merely, from a law suit; and he could have done it in no other way.
But a very different question is presented, when a salvor is to select a tribunal to decide upon his rights. If there is a court of ancient and acknowledged jurisdiction in such cases, which is peculiarly adapted to apply those extraordinary and anomalous principles of justice which govern salvage cases; which has facilities for bringing all the necessary parties before it, however *458 unconnected and difficult to be reached, and of adjudicating upon all their rights, however conflicting and difficult to be reconciled and adjusted ; which has a system, of practice and of equitable rules admirably adajDted to such cases, and which have grown up from the constant, unquestioned, an'd long continued exercise of its jurisdiction; it deserves consideration 'whether the salvor should not be required to select such a court, rather than one which possesses none of these qualifications, and which can lay no other claim to the jurisdiction, than that in the course of centuries it has once exercised it in a single case.
In the first place, the principles which govern salvage compensation have no analogy to any principles acted upon in courts of law or equity in other cases. There is no possible form of action, in which it could ever be recovered, except in the general form of assumpsit; an action in which one may recover what in strict justice is his own-, but no more. For services, he can recover no more than their ordinary value. And it was never heard of that courts in such cases could have any regard to public policy in estimating the compensation.
Very’different are the principles applied to cases of salvage. “ If we search,” says Oh. J. Marshall (in the case of The Blmreau, 2 Crunch R. 266,) “ for the motives producing this apparent prodigality, in rewarding services rendered at sea, we shall find them in a liberal and enlarged policy. The allowance of a very ample compensation for those services, (one very much exceeding the mere risque encountered and labor employed in effecting them,) is intended as an inducement to render them; which it is for the public interests, and for the general interests of humanity, to hold forth to those who navigate the ocean. It is, perhaps, difficult on any other principle, to account satisfactorily for the very great difference which is made between the retribution allowed for services at sea and on land; neither will a fair calculation of the real hazard or labor be a foundation for such a difference; nor will the benefit received, always account for it.” Certainly these are unusual grounds of recovery, under a quantum meruit, or indebitatus assumpsit
In estimating salvage, the ordinary quantum meruit is almost, if not entirely, lost sight of. The elements. of salvage service *459 which are principally regarded are, the enterprise, alacrity, intrepidity, and spirit of adventure of the salvor; the damages and difficulties he has to encounter; the fatigue, exposure, anxiety, and suffering which he endures; and the value of the property and degree of peril from which it is rescued. And an indispensable requisite, is, that he should be successful; for unless successful, he can make no claim for his services.
But the greatest objection to a common law action for salvage is, the unfitness of a jury to deal with it. The principles which govern its allowance can never be familiar to jurors, for they have no resemblance to the ordinary principles xipon which justice is administered. In most cases of salvage, there are many claimants among whom distribution is to be made according to rules which are only known to a coiut of admiralty, and which it requires great judicial ability to apjDly. There is one rate for the owner, another for the master, another for the mate, another for the seaman, another for the apprentice; all varying according to relative degrees of merit. There are sometimes different sets of successive salvors, whose respective claims are governed by well-established rules in admiralty. There are also well-settled rules, governing the proportions allowed in cases of derelict, and cases not derelict; in cases of great value, and cases of little value. In truth, there are often in cases of salvage, fifty different issues to be tried and decided, instead of the one or two single and simple issues, to which the wisdom of the common law has confined the function of a jury. Had not the subject of salvage been confided to the court of admiralty, it must have been assumed by a court of equity. The English chancery, which was wisely allowed to circumscribe the common law actions, would never have devised a writ for so complex and difficult a subject; but would, as it did in other similar cases, have itself afforded that relief which could- not safely be intrusted to a jlu7-
■ A court of admiralty has also the means of bringing before it all claimants of the property saved, or of barring their claims if they cannot be found or brought in. .It may also have plaintiffs before it whose claims are conflicting; and if all the salvors are not before it, or represented in court, it may reserve and set *460 aside their shares until called for. Such are some of the advantages and facilities, which a court of admiralty possesses for doing justice to all parties, and maiding a complete and final disposition of the whole subject in a single suit for salvage.
The difference between a court of admiralty and a court of common law in this respect, is well illustrated by the case before us. There were altogether some 50 men, probably, employed in the undertaking to get off the Oregon. There were also several steam-boats, vessels, and canal-boats engaged in the business, and two valuable steam pumps were used on the occasion. Several of those employed in getting her off, appear to have exercised a judgment quite as good as the plaintiff’s, and possibly rendered nearly as valuable services. At all events, every one employed, and every owner of property used to get her off, were entitled, probably, to salvage as well as the plaintiff, although not perhaps to so large a share. But the plaintiff is the only one who makes a claim in this suit; and I know of no common law rule which would have authorized the joining of any of the rest with him in this action. He' must sue alone, and every one of them must sue alone ; and if every one recovers, in proportion to the $2,000 allowed to him, the Oregon might better have been left to repose upon the rocks of Hellgate. The horrors of any alternative were better than such a litigation.
I need not pursue this subject further. It is obvious, that, although there may be cases of great simplicity, compared with those I have referred to, yet all, as regards the jurisdiction of courts over them, must occupy the same ground, and possess the same rights. The question of jurisdiction cannot depend upon the number of parties, or the complexity or difficulty of a case, but upon its character. If a court has jurisdiction of a single salvage case, it must have of all.
Hothing remains but to inquire how far courts of common law have exercised this jurisdiction, and what are the opinions of jurists in support of it.
But one instance is to be found in the English reports of a suit for salvage in a court of common law ; that of Newman v. Walters, (3 Bos. & Pul. 612.) It was an action of indebitatus assumpsit for salvage, brought by a passenger for acting as *461 master, after the master .had left the vessel with part of the crew, and with the rest of the crew bringing the vessel safely into port. No objection was made to the jurisdiction of the court, and it seems not to have been thought of. This probably arose from there being no difficulty as to parties, the mate and crew being clearly not entitled to salvage, and the plaintiff being the only one who could have any claim. The only question raised or considered by the court was, whether a passenger under such circumstances could be entitled to salvage.
I have not been able to find the subject mentioned in any elementary writer, except in Lord Tenterden’s treatise on shipping, and in a note to the form of a count for salvage in Ohitty’s pleadings. Lord Tenterden, (Abbott on Ship. 398, § 2,) says, that, -by the common law of England, salvage may be ascertained by a jury, in an action brought by the salvor- against the owner of the goods. But he cites no authority for it, although he does afterwards cite Newman v. Walters, to show under what circumstances a passenger may be entitled to salvage. Chitty in his second volume, p. 68, barely gives a form of indebitatus assumpsit “ for salvage of a certain anchor and cable,” and refers to Newman v. Walters as the precedent. These are the only forms of a declaration for salvage to be found.
A case has occurred in our own courts, (Peck v. Randall, 1 J. R. 165,) of a suit for salvage, but no question was raised or doubt expressed as to the jurisdiction; the case of Newman v. Walters having been cited and apparently regarded as furnishing a safe and reliable precedent.
We think that the occurrence of a single case of salvage in a court of common law, at so late a period as that of Newman v. Walters, while the court of admiralty had for ages been in the undisputed possession of the jurisdiction over such cases, is no evidence of a right to the jurisdiction, but rather the contrary ; the question of jurisdiction not having been raised or considered. And we think that the mere occurrence of such a case, ought not, under the circumstances, to weigh at all against the objections which wre have considered to a court of common law possessing jurisdiction. It was probably the frequent occurrence *462 of the cases of trover which led to no question of jurisdiction being raised in Newman v. Walters.
As I have already remarked, if we could ascertain that the case was decided upon salvage principles, we should set aside the report of the referees; but as this does not already appear, we shall only reduce the amount of damages, still allowing the plaintiff an amount so liberal, that it may well be doubted, whether it coaid be recovered under the quantum meruit, were it not for the extraordinary skill and ability which some witnesses have testified that he possessed. We think that the measure of his compensation should be governed as well by the extent of his skill and experience and his means and appliances for such duties, as by the number of days labor performed, or the number of men whose employment he secured.
On this footing, and having regard to the evidence, we agree that five hundred dollars will be a sufficiently liberal compensation for his services, and that he should recover two hundred and fifty dollars for the use of the underwriters’ steam pump, and the sum paid for cordage, &c., as allowed by the referees.
We will give to the plaintiff the option of reducing his report to the amount thus made up, and having it confirmed, or of having the report set aside and a new trial ordered; and the rule will provide for his election accordingly.
Oaklet, Oh. J. and Sandeokd, J., concurred in the judgment, on the ground that the referees evidently valued the services rendered, as upon a salvage; and that under the circumstances of the case, the plaintiff’s demand could not be enforced as a claim for salvage, or in the nature of salvage. Their reasons were, that when there is no express agreement, the circumstances of each case must govern in determining whether the services rendered are to be compensated on a qiicmtum meruit, or as salvage. In this case, the vessel was in a river or narrow strait, she was not derelict, she was never out of the actual possession of her owners, and although in great peril, not beyond their power to protect and secure by hiring suitable men and means. The plaintiff acted under an express employment from them; and a great many men, and numerous canal boats and other *463 vessels were likewise employed "by the owners, assisted in the work, and were paid "by them. It does not appear that the plaintiff’s compensation was at all risked on the event of success in saving the steamboat; and on the contrary, the circumstances tend strongly to show that he was to be remunerated according to the value of his services, on the same principle that others were paid who labored in subordinate stations in relieving her from the danger in which she was placed.
Paine, J., concurred in the result of these views, also reposing his judgment on the ground stated in his opinion.
(The plaintiff acquiesced in the decision, and took a judgment for the reduced amount prescribed in the rule.)