*Jewett, J.
 

 If the had a lien on the ^ wool, at the time the defendant took it from his *- possession, it was a sufficient special property to entitle nim to maintain this action.
 
 (Ingersoll
 
 v.
 
 Van Bokkelin,
 
 7 Cow. 670;
 
 Wheeler
 
 v.
 
 McFarland, 10
 
 Wend. 318;
 
 Rogers
 
 v.
 
 Arnold,
 
 12 Id. 30.)
 

 At the trial, the plaintiff insisted that he, at that time, had a lien on the wool in question — either, first, for salvage, by the common law; second, for salvage by the provisions of'our statute concerning wrecks; or, third, by agreement, or in consequence of the offer of a reward by the defendant for finding and saving the wool, or in consequence of a promise by the defendant to pay for finding; or that, at least, there was evidence on which the plaintiff could rely to establish a lien by agreement. The circuit judge charged the jury, that the plaintiff had no lien, either at common law, or under the statute, for
 
 salvage,
 
 or for his services, independent of any express agreement between the parties for a lien, or any growing out of the offer of a reward made by the defendant to the public, generally, for securing and restoring his wool.
 

 *1 think, that the learned judge was right, in f saying that the plaintiff had no lien on the wool ^ for his services, under the provisions of our statute concerning wrecks, for the plain reason, that the wool was not a wreck. A wreck is defined to be such goods as, after a shipwreck, are cast upon land by the sea, and left there, within some county; for they are not wrecks, so long as they remain at sea, in the jurisdiction of admiralty. (2 Inst. 167; Angell on Tide Waters 289;
 
 Constable’s Case, 5 Co.
 
 106 b; 1 Bl. Com. 291). The property in question was not cast upon land by the sea.
 

 
 *558
 
 By the common law, all wrecks belonged to the crown, and the property in them was lost to the owner. But our statute (1 R. S. 690, § 1) declares, that “no ship, vessel or boat, nor any goods, wares and merchandise, that shall be cast by the sea upon the land, shall be deemed to belong to the people of this state, as wrecked property, but may be recovered by the owner, &c., upon the payment of a reasonable salvage and necessary expenses.” The statute makes provisions for the immediate sale of wrecked property, if it shall be in a perishable state, and if not, for its safe keeping, for the space of a year, for the true owner, to whom it is to be delivered, on his paying reasonable salvage, and, if not reclaimed within that time, the property is required to be sold and the proceeds accounted for to the state.
 

 All the provisions of this statute, I think, relate exclusively to such property as, at common law, is known as
 
 wrecks,
 
 and the charges upon such property, as salvage and the expenses incurred under the provisions of the statute. It was well remarked by the court below, that what was
 
 wrecked property
 
 at common law, is
 
 wrecked property
 
 under the statute; in relation to which it was the intention of the legislature to make provisions, and nothing beyond.
 

 But I think that the judge erred, in charging the jury that the plaintiff had no lien on the wool for salvage, at the common law. The facts on which this question arises are not in dispute. The canal-boat upon which the wool in question was on board, on her passage down the Hudson, in tow of a steamboat, in consequence *of a collision with another steamboat, was sunk V KkQ j and disappeared in or near the channel of the river, about the 16th day of November 1846. Immediately after the loss occurred, the defendant came to the point where it happened, and employed several persons, for several days, to search for the boat and cargo, by fishing for her, but without success, when he
 
 *559
 
 left, and the search was discontinued. About two months thereafter, the boat was discovered near the centre of the river, and the plaintiff, with several men in his employ, immediately undertook to save the boat and cargo, and after several days’ exertion, attended with more or less expense, danger and personal risk, succeeded in bringing the boat and cargo to the shore, and raising and unlading her cargo thereon. The place where the boat was sunk was within the county of Greene, and where the tide ebbs and flows about four feet.
 

 It is said by Judge Story, in his treatise on Bailments, § 622, that whenever, upon the high seas, or on the sea coast, or
 
 elsewhere,
 
 within the
 
 admiralty and maritime jurisdiction
 
 (which is ordinarily limited to places within the ebb and flow of the tide), any services are rendered by persons, not composing the ship’s crew, to ships in distress, by saving them or their cargoes from impending perils or losses, or by recovering them after they have been lost, or by bringing them in and preserving them, when found
 
 derelict,
 
 in order to have them restored to the rightful owners, such persons are denominated
 
 salvors;
 
 and they are entitled to a compensation for their services, which is known by the name of
 
 salvage.
 
 As soon as they take possession of the property, for the purpose of preserving it; as, for example, if they find a ship derelict at sea, or if they recapture it, or if they go on board a ship in distress, and take possession with the assent of the master or other person then in possession; in all such cases, they are deemed
 
 bond fide
 
 possessors, and their possession cannot be lawfully displaced by any third persons. They have a lien on the property saved, for their salvage, which the laws of all maritime countries respect and enforce.
 

 In 3'Kent’s Com. 245, it is laid down, that salvage is the compensation allowed to persons by whose assistance a ship or *its cargo has been saved, in whole or in part, from impending danger, or recovered *-
 
 *560
 
 from actual loss, in cases of
 
 shipwreck, derelict
 
 or
 
 recapture.
 
 And Abbott defines salvage to be “the compensation that is to be made to persons, other than those connected with the ship, by whose assistance a ship or its loading may be saved from impending peril, or recovered from actual loss” (Abbott on Ship. pt. 4, chap. 12, § 1). In § 2, it is laid down, “ that a person, who, by his own labor, preserves goods, which the owner', or those intrusted with the care of them, have either abandoned in distress at sea, or are unable to protect and secure, is entitled, by the common law of England, to retain possession of the goods saved, until the proper compensation is made for his trouble.” For which is cited
 
 Hartford
 
 v.
 
 Jones
 
 (1 Lord Raym. 393), where a person was in possession of goods, which he had hazarded his life to save, in a ship which took fire, and was ready to deliver them to the owner, on being paid for salvage, in an action of trover brought by the owner against him to recover for the goods, Holt, C. J., held, that he might retain the goods, until payment, as well as a
 
 tailor,
 
 or a
 
 hostler,
 
 or a common carrier. By saving the property, the salvor acquires a
 
 jus m re,
 
 and a complete possessory right against all persons claiming an interest in it,' to retain it until his compensation is paid, or until he can proceed to enforce his right against it by due course of law. (Flanders’ Mar. Law, § 384;
 
 The Emblem,
 
 Davies 67-8; Abbott on Shipping, part 4, chap. 12, § 2;
 
 Cashmere
 
 v.
 
 De Wolf,
 
 2 Sandf. 379.)
 

 The finder of a thing, which is lost on land, belonging to another, and who voluntarily puts himself to some trouble and expense, to preserve the thing and to find out the owner, has no lien upon it for the recompense which he may reasonably deserve. But the maritime law, from considerations of public policy and commercial necessity, has established a different rule for goods which are lost at sea. Under such circumstances, this law supports the lien in the case of
 
 salvage, (Nicholson
 
 v.
 
 Chapman,
 
 2 H. Black. 254;
 
 The Emblem,
 
 Davies 67.)
 

 Whether the boat and cargo in this case may possibly be ^regarded as a legal
 
 derelict,
 
 it is not, on this ^ occasion, material to determine. For, whether ^ it were so or otherwise, only affects the question of the rate of salvage in the particular case. “In general, the rule of salvage, in cases of legal derelict, is to give the salvor one-half of the property saved; but cases may occur of such extraordinary peril and difficulty, or of such exalted virtue and enterprise, that a moiety even of a very valuable property, might be too small a proportion; and on the other hand, there may be cases, where the service is attended with so little difficulty and peril, that it would entitle the parties to little more than a
 
 quantum meruit
 
 for work and labor.”
 
 (Rowe
 
 v.
 
 Brigg,
 
 1 Mason 377; Flanders’s Mar. Law, § 386.)
 

 From the facts, I think, this is a case of
 
 derelict,
 
 in the sense of the maritime law, if the place where the loss happened can be regarded as upon the sea. Judge Story, in
 
 Rowe
 
 v.
 
 Brig
 
 (1 Mason 373), said, to constitute a derelict in that case, it is sufficient, that the thing is found deserted or abandoned upon the seas, whether it arose from accident or necessity, or voluntary dereliction. He also said, that Sir Leoline Jenkins (1 Sir Leoline Jenkins’s Works 89) had given a true definition, in its broad and accurate sense, when he said, derelicts were “ boats or other vessels forsaken, or found on the seas, without any person in them.” The boat in question was found, apparently forsaken, there was no one in it.
 

 It remains to be considered, whether the services were rendered in saving the property in question, lost at sea. The sea, as defined by Lord Hale (De Jure Maris, Harg. Tracts, chap. 4, p. 10), is either that which lies within the body of a county, or without. That the arm or branch of the sea which lies within the
 
 fauces terras,
 
 where a man may
 
 reasonably
 
 discern between shore and shore, is,
 
 or.
 
 
 *561
 

 at least, may be
 
 within the body of a county; and, therefore, within the jurisdiction of the sheriff or coroner; and that the part of the sea which lies not within the body of a county, is called the main sea or ocean. (See also
 
 United States
 
 v.
 
 Grush,
 
 5 Mason 290; Angell on Tide Waters 4.)
 

 It has repeatedly been held, that admiralty jurisdic- * 562 1 **on ^braces *rivers navigable from the sea; ^ within the ebb and flow of the tide, although the locality may be within the body of a county; and when the locality is within the ebb and flow of the tide, and within the body of a county, a court of common law has a concurrent jurisdiction. (Gilpin 526;
 
 In re Jefferson,
 
 10 Wheat. 428;
 
 Cashmere
 
 v.
 
 De Wolf,
 
 2 Sandf. 379;
 
 United States
 
 v.
 
 Grush, 5
 
 Mason 290;
 
 Waring
 
 v.
 
 Clark, 5
 
 How. 441; Flanders’ Maritime Law, § 383.)
 

 We have already seen, that to constitute a salvage service, it is not necessary that it be rendered upon the
 
 high seas,
 
 it is enough, in respect to locality, that it be within the admiralty and maritime jurisdiction; and that comprehends as well the
 
 high seas
 
 as the sea coast, and navigable rivers as high as where the tide ebbs and flows, although it should be within the body of a county. (Story on Bailments, § 622.)
 

 Some stress, in the court below, was placed on the decision in
 
 Nicholson
 
 v.
 
 Chapman
 
 (2 H. Black. 254), to show that the plaintiff had not rendered any
 
 salvage
 
 service in securing the property in this case, and, of course, acquired no
 
 lien
 
 thereon for his services. But it seems to me, that if we attend to the distinction existing between the facts in that case and in this, it will be quite obvious, that the decision in that cannot govern in this; there, a considerable quantity of timber, the property of the plaintiff, was placed in a dock, on the banks of the Thames, but the ropes with which it was fastened, accidentally getting loose, it floated, and was carried by the tide as far as Putney, and there left at low-water upon a
 
 *562
 
 towing-path; Chapman, the defendant, with his wagon, removed the timber from the towing-path, which it obstructed, to a place of safety, at a little distance; and when the plaintiff sent to demand the timber to be restored to him, refused to deliver it up, unless he was paid a recompense for his trouble of drawing the timber from the water-side, to the place where it then lay. It was held, and rightly, too, as I think, that he had no lien on the timber for the trouble or expense to which he had put himself in the carriage of it. The timber was found lying upon the banks of the river and was taken into the possession and under the care of the defendant, * without any extraordinary exertions, „ # without the least personal risk, and, in truth, with very little trouble.
 

 In the case before us, the boat and cargo had been sunk and disappeared, in or near the channel of the river, about the middle of November, and was not discovered again, until the lapse of two months, when it, in part, had risen to the surface of the river. In that condition, the plaintiff, with several men in his employ, after exerting themselves for several days, attended with some personal risk, danger and expense, succeeded in saving the property. I think, the evidence shows, the property in question was so situated that it was in great danger of being lost, and that the services rendered to save it, by the plaintiff, were strictly of the character of
 
 salvage
 
 services, for which our law has provided a recompense, and that it should be a
 
 lien
 
 upon the goods which have been saved. It may not be, however, of as high a degree of salvagement, as is often presented.
 

 The fact that the
 
 lien
 
 is for salvage, does not oust the jurisdiction of a court of common law. The plaintiff has a right to retain the property for his lien, and put the owner to a tender, and then try it in such court; he is not bound to go into admiralty.
 
 (Hartfort
 
 v.
 
 Jones,
 
 1 Ld. Raym. 393; Abbott on Ship. 662, ed. 1846; Cash
 
 *563
 

 mere
 
 v.
 
 De Wolf,
 
 2 Sandf. 379; Flanders’s Mar. Law § 384;
 
 Nicholson
 
 v.
 
 Chapman,
 
 H. Bl. 259;
 
 Sturgis
 
 v.
 
 Law,
 
 3 Sandf. 451.)
 

 There were several other questions made by the bill of exceptions, but it is unnecessary to determine them. The judgment must be reversed, and a new trial granted, costs to abide the event.
 

 Judgment reversed, and new trial awarded.