## The S. A. Rudolph.

### McCaulley *et al.* v. The Rudolph.

*(District Court, S. D. New York. June 14, 1889.)*

SALVAGE—ABANDONMENT.

The schooner R. having stranded on the Jersey coast during a snow-storm, the master and crew were taken ashore by the life-saving service. A tug was sent for by the master, who kept watch of the vessel as she floated and drifted upward and outward along the beach. The libelants' tug, passing near in rough weather, observing the schooner's condition, went to her rescue, and towed her to New York. No signal was given the tug from the shore. *Held*, that the service was a salvage service; that the schooner was only temporarily abandoned; and that the service was rendered with the virtual consent of the master; and $1,500 was awarded upon the gross value of $6,314, for ship, freight, and cargo,—one-third to the master and crew, two-thirds to the owner; and an amendment to the libel was allowed to embrace the master and crew.

In Admiralty. Libel for salvage.

*H. D. Hotchkiss*, for libelants.
*Owen, Gray & Sturges*, for claimant.
*W. A. Walker*, for the cargo.

BROWN, J.   On the 6th of February, 1889, the schooner S. A. Rudolph, bound from Washington, N. C., to New York, loaded with lumber partly on deck, stranded on the New Jersey coast off Point Pleasant, during a snow-storm.   After being aground a couple of hours, the master and crew were taken ashore by a crew from the life-saving station at Island beach, the master being injured by having a hand mashed, and being disabled in the legs.   The captain sent a telegram to New York for a tug.   About half past 10 the libelants' tug, Ivanhoe, approached the schooner, which was at that time afloat, and, seeing no one on board, took her in tow and brought her to New York.   Before the schooner had floated the mate had again visited her, but, finding three feet of water in the hold, refused to stay aboard.   The wind was blowing off shore, the schooner had some sails set partly torn, and the tiller was lashed to port. Some little time before the Ivanhoe approached her she had floated in the flood tide, and she was drifting up along the beach at the rate of about three miles an hour.   The captain and crew, with the members of the life-saving staff, were on shore watching her, and it is claimed they were preparing to go on board of her again at the time when the Ivanhoe took charge of her.   The captain, it is said, desired to go on board before, but was prevented by the captain of the life-saving crew on account of his injuries.   The libelants claim that the schooner was derelict.   I cannot find upon the evidence that the schooner was derelict or abandoned.   There still remained the *spes recuperandi*.   A tug had been sent for.   The master and crew were watching her from the shore, with reference to her preservation.   I am not satisfied, however, that there was any present intention of boarding her for the purpose of attempting to navigate her into New York harbor.   When the tug appeared no signals to her were made by the schooner's master and crew on shore.   Such signals might have been made, and if there had been any objection to the tug's rescuing the schooner, the tug's presence and manifest intention, instead of causing the master and crew to forbear to go out in the boat, as it is alleged they were preparing to do, would naturally have expedited their going.   Virtually, therefore, the tug acted upon the assent, if not request, of the master of the schooner, and rescued her in her existing and apparent condition, *i. e.*, only temporarily abandoned, and remaining under the eye and watch of her master and crew, who were seeking some means of rescue, and were satisfied that the Ivanhoe should take her in the condition she was.   Under such circumstances the service was a salvage service, and entitled to a reasonably liberal reward.   Though the sea was rough and the weather stormy, the service itself was not attended with any great difficulty or danger.   The vessel, as saved, was of the value of $4,700, the freight $890, the cargo of the net value of $724,—in all $6,314.   Fifteen hundred dollars will, I think, be a proper compensation for the whole service of the Ivanhoe,

her master, and crew, to be apportioned ratably against the schooner, freight, and cargo. See *The Hyderabad*, 11 Fed. Rep. 749; *The Joseph C. Griggs*, 1 Ben. 81; *The Anna*, 6 Ben. 169. Of this amount one-third should go to the master and crew of the Ivanhoe and two-thirds to the owners. The libel is filed by the owners alone, and not in behalf of all interested. A petition may be filed in behalf of the master and crew, or the libel amended in behalf of all interested, and a decree thereupon taken for the full amount. *The Adirondack*, 2 Fed. Rep. 872. If neither is done within a reasonable time, the libelants may take a decree for their share only.