SANTISSIMA TRINIDAD, The (CANIZARES v.). See Case No. 2,383.

SANTOS (BOWDEN v.). See Case No. 1,716.

SANTOS (UNITED STATES v.). See Case No. 16,222.

SAPPHIRE, The (POPE v.). See Case No. 11,276.

## Case No. 12,334.

### The SARAGOSSA.

[1 Ben. 551.] [1]

District Court, S. D. New York. Nov., 1867.

SALVAGE — IN DISTRESS — COMPENSATION — DISTRIBUTION.

1. Towing a steam vessel which has lost the use of her steam machinery by an accident, although she is sound in hull and masts, is a salvage service.

[Cited in The Emily B. Souder, Case No. 4,455; The Plymouth Rock, 9 Fed. 416; McMullin v. Blackburn, 59 Fed. 178.]

2. It is not necessary that the distress should be actual or immediate, or that the danger should be imminent or absolute. It is sufficient if, at the time when the service is rendered, the vessel has encountered any damage or misfortune which may possibly expose her to destruction if the service be not rendered.

[Cited in McConnochie v. Kerr, 9 Fed. 53; The Plymouth Rock, Id. 416; The Alaska, 23 Fed. 608; The Veendam, 46 Fed. 491.]

3. Where a steamer, which has lost the use of her machinery, was towed by another steamer about sixty or sixty-five miles to Charleston, the latter losing by the service not over two or three hours of time, and the former saving three or four days, the vessel towing, with her cargo, being worth $230,000, and the saved vessel and her cargo being worth $100,000, the court awarded $900 salvage. Of this $900, $400 was allotted to the owner of the saving vessel, and $50 to her master, and the remaining $450 was ordered to be divided among the officers and crew, including the master, in proportion to their wages.

[Cited in The Colon, Case No. 3,024; The Leipsic, 5 Fed. 113.]

In admiralty.

Beebe & Donohue, for libellants.

E. C. Benedict, for claimant.

BLATCHFORD, District Judge. This is a libel for salvage, filed by Cornelius K. Garrison and others, owners of the steamer San Salvador, on behalf of themselves and all others claiming any interest, against the screw steamer Saragossa, her tackle, &c. The crew of the San Salvador have come in by petition and been made co-libellants. On the 30th of April, 1867, the Saragossa, being, with her cargo, of the value of $100,000, and on a voyage from New York to Charleston, broke

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

the coupling to her shaft so that her screw became of no service. While in this condition she was found by the San Salvador, at a point about sixty to sixty-five miles from Charleston bar, and about fifty miles south of Frying Pan Shoales. The San Salvador was on a voyage from New York to Savannah, with a cargo and passengers, and was, with her cargo, of the value of $230,000. The Saragossa was in the usual track of vessels running down the Atlantic coast, and attracted the attention of the San Salvador by hoisting her ensign, union down. She had her sails set, the wind being light from the northward and eastward, but she was making very little headway. She asked the San Salvador to tow her to Charleston. The San Salvador towed her from sixty to sixty-five miles, using the hawser of the San Salvador, and left her in a safe place inside of Charleston bar. The service occupied about nine hours, at a speed of about seven knots an hour, the usual speed of the San Salvador in like weather being about eight knots an hour. What wind there was was fair to carry the Saragossa to Charleston by means of her sails, and she was in all respects in a good condition, except the accident to her machinery. The sea was very smooth, and it would probably have taken her three or four days to reach Charleston with her sails, it being nearly a dead calm. The usual route of the San Salvador would have carried her about nine miles outside of Charleston bar, and she deviated from her route at an angle of about fifteen degrees. The loss of time to the San Salvador was not over two or three hours, with the corresponding increased expense of coal, and the saving of time to the Saragossa was three or four days, with the saving of her expenses for that time.

This service was a salvage service. In order to make a salvage service it is not necessary that a vessel, whether sailing or steam, should be unnavigable, or that a steam vessel should be injured not merely in her machinery but in her hull or her sails also. Where a vessel has not received any injury or damage, and is in the same condition she would ordinarily be in without having encountered any damage or accident, a service rendered to her is not a salvage service. The Reward, 1 W. Rob. Adm. 177. A steam vessel which has lost the use of her steam machinery by an accident, is not in the same condition she would ordinarily be in, although she is sound in hull and masts and has the use of her sails, and a service rendered to her under such circumstances, by towing her, is not a mere towage service, but is a salvage service. It is not necessary that the distress should be actual or immediate, or that the danger should be imminent or absolute, but it is sufficient if, at the time the assistance is rendered, the vessel has encountered any damage or misfortune which might possibly expose her to destruction if the services were not rendered. The Charlotte, 3 Rob. Adm. 68, 71.

I think, in this case that $900 is a proper compensation. Of this sum I award $400 to the owners of the San Salvador and $50 to her master. The remaining $450 is to be divided among the officers and crew, including the master, in proportion to their respective monthly wages, the apportionment to be made by a commissioner, on a reference, unless the parties agree upon it. The claimant must, also, pay the costs of the suit.