## Case No. 13,559.

### STUDLEY v. BAKER et al.

[2 Lowell, 205.] [2]

District Court, D. Massachusetts. March, 1873.

#### SALVAGE—SETTLEMENT WITH OWNERS — RIGHT OF CREW TO PARTICIPATE—AMOUNT OF COMPENSATION.

1. If the owners of a vessel which has performed a salvage service make a settlement with the owners of the property saved, and receive the salvage, the crew may recover from them a due share of the reward by libel in admiralty.

[Cited in McConnochie v. Kerr. 9 Fed. 51; The Olive Mount. 50 Fed. 564; McMullin v. Blackburn, 59 Fed. 179.]

2. Where a coasting schooner rendered such a service to a frigate. and a sum of money was paid by the United States to the owners of the schooner, who signed a receipt for owners. master. and crew. held, the crew were entitled to a share, although the owners testified that they did not consider the services of the crew in making the settlement.

3. Where the principal service had been performed by the vessel acting as a lighter, and the actual work of lightering had been done by men from the vessel in distress. the owners and master of the lighter were allowed three-fourths of the salvage. and the crew one-fourth.

[Cited in McConnochie v. Kerr, 9 Fed. 59.]

The libellant [Leonard Studley] alleged that in January, 1870, he engaged as mate on board the schooner Harriet Gardner for the general coasting service from port to port in the United States during the season, at monthly wages, and served therein until the times after mentioned. That, on the 6th of October, 1870. the schooner. with the libellant on board, fell in with the frigate Guerriére ashore on a dangerous shoal in Vineyard Sound and in great peril; that the schooner and her crew assisted the frigate by carrying out an anchor and by lightering her. being employed in the service for two days, and being exposed to peril and hardship; that, by this aid, with that of other vessels, the frigate was saved; that there was awarded and paid, by the government of the United States, to the two defendants [J. K. Baker and another] who were the owners of the schooner, and one of whom was the master, the sum of $3,500; that the services were salvage services, and the sum assessed was paid for such services, and the libellant was entitled to his share thereof; but the respondents refused to pay him any thing. The answer set up a want of jurisdiction in admiralty; admitted that the money was paid the respondents. but alleged it was not for salvage, nor for any services of the libellant. but for the use of their vessel, and for damages and expenses accruing to them alone as her owners. in respect to the lightering, &c. There was evidence that the schooner was of about fifty tons register, and carried on this occasion a master, mate, and cook; that, seeing the frigate in distress. about ten miles off, they went alongside, and were asked to help in carrying out an anchor; that the master said he had ·no crew, and the officer replied that the frigate had plenty of men, and he ordered thirty-five or more to go on board the schooner, and these men did most of the work. How much the libellant actually did was in dispute; but it was not denied that he was ready to do whatever was required. and that he assisted more or less in managing the schooner. A very heavy anchor was put

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Hon. John Lowell, ·LL. D., District Judge, and here reprinted by permission.]

on board, and the schooner was somewhat damaged by collision with the frigate, without any fault on her part. She was delayed about thirty days in repairing the injuries. R. B. Forbes, Esq., acted as agent for the government in settling with the respondents for their compensation; and a letter from that gentleman was read as part of the res gestæ, in which he suggested to the respondents a basis of settlement, to which they assented, and according to which the payment was made. From this letter, it appeared that the respondents were paid several specific sums for repairs, for demurrage,—including wages and board of crew and loss of employment of the schooner,—and for injury to cargo; and, besides these, there were two items, as follows: Value of services lightering, $540; ditto, carrying out anchor, $1,000. The total was $3,535, the odd dollars being for interest after the adjustment was arrived at. For this sum, one of the respondents gave a receipt, expressed to be for the owners, master, and crew of the schooner. The owners testified that they did not consider the libellant at all in the settlement.

G. Marston, for libellant.

J. M. Day, for respondents.

LOWELL, District Judge. The question of jurisdiction is an interesting though not a difficult one. I shall examine it at some length, because the reported cases, though unanimous, are not numerous; and the point has been thought worthy of argument in the case. Admiralty courts are so peculiarly well fitted to deal with salvage, that cases of that sort are very rarely brought elsewhere. Judge Peters once said that he should be much disposed to consider the jurisdiction exclusive, and that he had never seen the report of such a case at common law. Brevoor v. The Fair American [Case No. 1,847]. A few years after these remarks were made, there was a case in which a single salvor recovered a verdict and judgment at law for salvage, no question of jurisdiction being raised. Newman v. Walters, 3 Bos. & P. 612. There is one case in equity, arising out of the refusal of Judge Betts to take jurisdiction in admiralty (see One Hundred and Ninety-Four Shawls [Case No. 10,521]) in which the owner of goods was permitted to maintain a bill against the agent of alleged salvors to pay the salvage, if any, and redeem the goods (Cashmere v. De Wolf. 2 Sandf. 379). The court, in that case, say they would not take jurisdiction if an admiralty suit were pending. In another case, in equity, connected with the same transaction, the jurisdiction was denied. Frith v. Crowell, 5 Barb. 209. In the same court that had upheld the jurisdiction in equity, a very learned and able opinion was soon after given by one of the judges against the existence of such a ju-

risdiction at common law; but the case was decided on a different point. Sturgis v. Law, 3 Sandf. 456, per Paine, J. A question of salvage appears to have been involved in the case of Peck v. Randall, 1 Johns. 165; but in a way that presented no difficulty, and no question was raised on this point.

In 1853, the court of queen's bench decided that one of the crew of a vessel that had performed a salvage service could not maintain an action against the owners of the property benefited; because no promise to pay could be implied. They said, very truly, that in the admiralty courts the proceedings were independent of contract. Lipson v. Harrison, 2 Wkly. Rep. 10. This decision virtually ousts the jurisdiction of common-law courts, excepting in those few cases in which a contract could be proved. If the question, for instance, were to arise, whether a promise might not be implied to pay the master of the salving vessel, the answer would be, that the master is not the agent of the crew in such a business; and, it having been decided, as we shall see presently, that the courts of common law have no jurisdiction of a suit by the crew against the master for a share of salvage, they would be obliged to say, I think, that they could not award the salvage to the master. In Lipson v. Harrison, the learned judges said that Newman v. Walters, ubi supra, was the only case on the subject; and they evidently doubted whether they could have jurisdiction under any circumstances.

The courts of common law recognize a lien in salvors so long as they retain possession of the goods saved; and there are, several cases in trover which decide this point. Hartford v. Jones, 1 Ld. Raym. 393; Baring v. Day. 8 East, 57; Baker v. Hoag, 7 N. Y. 555. But whether they would, at the present day, pass upon the amount due for salvage, by leaving to the jury the sufficiency of any tender that may have been made, I do not undertake to say. See the remarks of Judge Betts in Raft of Spars [Case No. 11,528].

Reported cases, at law, for distribution of salvage are equally rare with those on the general subject. In the exchequer in England, in 1862, the judges decided that such an action would not lie; and they all said they had never heard of such a case. They commented on the great embarrassments which would surround an attempt to settle such a question at law. Atkinson v. Woodhall, 1 Hurl. & C. 170. A similar course of argument concerning the analogous case of a suit for prize-money is found in the opinion of Story, J., in Maisonnaire v. Keating [Case No. 8,978]. In this country, two actions have been brought and sustained at law for a share of salvage; but in the former there was no question of jurisdiction raised, and in the latter there was decisive evidence of a contract which might found an action of assumpsit. Blake v. Patten, 15 Me. 173;

Hawkins v. Avery, 32 Barb. 551. I have cited all the cases of any importance that are known to me at law or in equity; and they leave the jurisdiction of these courts in much doubt

That a court of admiralty has such jurisdiction, I cannot entertain the slightest doubt. The liability of the defendants does not rest on a promise, express or implied, so much as on the duty of the owners to pay the men their wages, and whatever else is due them by virtue of their employment in the vessel and of the incidents of the voyage. The amount is not liquidated, and can be conveniently ascertained only by a court of admiralty, which distributes salvage according to its own views of propriety and justice. The money, in this case, was taken by the defendants upon a trust which may sometimes be enforceable at law or in equity, and always in admiralty. Indeed, a suit for distribution of salvage is really a salvage suit, and is always so denominated by good pleaders.

A salvage suit may be instituted against the property saved, or the owner of the property, if he has accepted it cum onere; or it may be brought by the owner against the salvors for restitution of his property after payment of salvage. Post v. Jones, 19 How. [60 U. S.] 150. So it may be brought by part of the salvors against the others for a distribution. Such a suit was entertained by Judge Davis in this court as early as 1807. Jewett v. Hill [unreported]. In 1828, in the Southern district of New York, a like action was brought by an owner against the master, who had received salvage money abroad, and had sent it home. Waterbury v. Myrick [Case No. 17,253]. Betts, J., said that he had no doubt of the jurisdiction, but should not make it a point of decision, because it was not properly pleaded. He could not, in fact, avoid making it a point of decision; because consent cannot give jurisdiction of the subject-matter, though it may of the parties.

In 1830, Judge Davis made a decree for the libellant in another similar case, though without recording any opinion. Cook v. Ellery [unreported]. In 1831, there was a case before the same judge, exactly like the one at bar. It was a libel by some of the crew against the master of their vessel, alleging that they had picked up two logs of mahogany, and that the defendant had sold them, and had paid nothing to the libellants. The answer insisted that the libellants had been paid their wages, and that, as they had incurred no risk or labor, they ought not to have salvage. But salvage was decreed. Fernald v. Two Logs of Mahogany [unreported]. In 1839, the jurisdiction was sustained by Judge Ware in a careful opinion; in which, however, this point is treated as clear. The Centurion [Case No. 2,554]. In 1852, Judge Sprague decided such a case in the same way. Coombs v. Dow [unreported].

In England, it is possible that the exercise of this function may have fallen into disuse with so many other of the proper powers of the admiralty. Such would seem to be the bearing of the remarks of Dr. Lushington, in giving judgment in The Hope, 1 W. Rob. Adm. 267, and in The Britain, Id. 45, note. If so, it has long since been restored by statute. I have not followed out this inquiry, because it is of no practical importance here. If it were so, it is certainly remarkable, and testifies very strongly to the difficulties attending the exercise of the jurisdiction at law, that no case was known to the learned judges of the exchequer to have been brought at law, even when the powers of the admiralty court were in abeyance. I suppose the remedy must then have been in equity.

It having been agreed by counsel that the decision should not be delayed to make the other salvor a party, but that he should be settled with on the basis of the decree, I proceed to consider the merits of the case. It is plain that the $1,540 was paid as salvage. Mr. Forbes says so in his letter, as plainly as he could say it, without using the word "salvage." It is so much for services in carrying out an anchor and in lightering. The services were of the character of salvage; and the compensation was such as to indicate beyond mistake that it was so understood, because it was more than five times the value of the use of the vessel for a month, as allowed in the same settlement. Then the receipt was for owners, master, and crew; and no explanation of those words is possible, except that it was salvage, because the United States had no occasion to pay the master and crew any thing unless as salvors. It was said that the government had overlooked the crew, and had made payment only for the use of the vessel; but the receipt negatives this conclusively, and so does the whole aspect of the case. It would be most improbable that the United States should undertake to settle the case in parcels; and the owners ought not to be presumed to be looking after their own interests only. But it is not needful to go into presumptions, because it is perfectly plain that it was the intent of both parties to adjust the compensation for the whole salvage service. The respondents may have thought that the two men were not to be considered; that they had earned nothing, and ought not to put forward any pretensions. This is what their evidence means; that, though they have settled with the government, yet they have not settled for the libellant, because he never had any claim on the government. They have assumed to settle the whole case, and to give a receipt binding on the libellant; and they, at least, are not to be heard to deny their own authority, or to say that if the libellant has a right to any thing, they are not the persons from whom to recover it.

Nor is it any less certain that every man on board a salving vessel, who is ready to do what he can, is to share in the remuneration. The whole matter depends on a large and liberal policy, which looks almost as much to the general interests of commerce as to individual deserts. Those owners of ships whose crews are engaged in salvage always receive something, whether they can prove any actual damage to their voyage or not. The only difficulty is in the distribution. Considering that it is true, as set up by the owners, that the use of their vessel was chiefly as a lighter worked by the men of the Guerrière, and that no great labor or hardship was imposed on the libellant, and that the owners have been at all the trouble of obtaining the money from the United States, I think it would be fair to give a somewhat larger share than usual to the owners. Taking them to have received by this time, including interest, about $1,600, I divide it into eighths, of which the libellant and the other man would be entitled to one, or $200 each. Decree for libellant for $200 and costs.