## Case No. 2,127.

### BULLINGER v. MACKEY.

[15 Blatchf. 550.] [1]

Circuit Court, E. D. New York. Feb. 8, 1879.

COPYRIGHT—SUBJECT OF— COMPILATION — PROOF OF ORIGINALITY—INFRINGEMENT.

1. A compilation of information respecting railroads, &c., is a proper subject of a copyright.
   [See Banks v. McDivitt, Case No. 961; Lawrence v. Cupples, Id. 8,135.]

2. The fact that the plan, arrangement and combination of a copyrighted work originated in the brain of its author, may be proved by some other person than such author.
   [See Boucicault v. Fox, Case No. 1,691.]

3. The defendant's compilation in this case *held* not to have been copied from that of the plaintiff.

4. A compilation made from original sources is a new work.

5. The plaintiff's method of imparting information in his compilation, employed by the defendant, *held* not to have been new with the plaintiff or to have involved invention, although the plaintiff had, for the first time, aggregated various methods, each of which had been used before.

[In equity. Bill by Edwin W. Bullinger against Joseph Mackey to restrain infringement of a copyright. Bill dismissed.]

O. J. Wells and Thomas William Clarke, for plaintiff.
George W. Lord and Benjamin F. Tracy, for defendant.

BENEDICT, District Judge. This is a suit in equity for damages and an injunction by reason of an alleged infringement by the defendant of a copyright of the plaintiff. The bill avers, that, heretofore and before the 26th day of March, 1870, the plaintiff was the proprietor of a certain book, the title whereof was "Supplement to the Counting House Monitor;" that, in the year 1872, he published his book, revised and amended, under the title, "Monitor Post Office, Banking and Shippers' Guide;" that, in 1873, he revised and amended and published his said book under the title, "The Monitor Post Office, Telegraph, Express and Shipping Guide for the United States and Canada;" and that, in 1876, he revised and amended and published his said book, (designated, in this case, plaintiff's Exhibit H,) under the title, "The Monitor Guide to Post Office and Railroad Stations in the United States and Canada, with Shipping Directions by Express and Freight Lines. A Supplement to the Counting House Monitor." These books the plaintiff asserts have a value by reason of certain peculiarities of structure and the mode of using arbitrary signs and figures, and he avers that the said plan, combination, arrangement and peculiarity of structure

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

were the original work of the plaintiff, and that the exclusive right thereto belongs to him. In regard to each of said publications, the bill avers due performance of all the acts required by statute to be performed to secure a copyright thereof, as to which there is no controversy. The bill then charges, that the defendant, in February, 1877, published a book (designated, in this case, "Defendant's Exhibit J"), entitled, "Mackey's Shippers' Guide, or Mackey's Guide to all the Express, Telegraph, Money Order and Post Offices in the United States and Canada, with a Complete List of All Railroads, their length, starting point and terminus, giving each station and by what road it is reached, and, in addition, shows what express and freight lines will deliver goods to all the above points." This book, the plaintiff avers, is copied and printed from the books of the plaintiff described in the bill, and is an infringement on the plaintiff's said copyright, in that it is, in all respects, identical with the plaintiff's books, in the plan, combination, arrangement and method of imparting the same information. The defendant, in his answer, denies that his book was copied from the plaintiff's books. He also denies that the plan, combination, arrangement and peculiarities of structure displayed in the plaintiff's books are the original work of the plaintiff, or that he is entitled to the exclusive right to use the same. He further avers, that, since 1862, he has published periodicals containing information of the same character as that contained in the plaintiff's work; that all the information contained in the plaintiff's books had been given to the public in substantially the same form by other publications, including those of the defendant, prior to the publication of the plaintiff's works, and that the plan, arrangement or combination of matters in the plaintiff's books were not new, nor were the materials contained in them brought together in a new form for the first time by the plaintiff, but the same had been given to the public in substantially the same form, in certain prior publications designated in the answer. Testimony having been taken upon the issue thus raised, it was referred to a master to report to the court, among other things, "the identity, if any, and in what particulars, of plan, arrangement, combination of materials and the method of imparting instruction, between complainant's Exhibit H, and defendant's Exhibit J; also, the identity, if any, and in what particulars, of plan, combination of materials, arrangement and the methods of imparting information, between the complainant's publication set forth in the bill, and such of the publications set forth in the answer as may appear to have been made prior to the date of complainant's copyright, in the respect, if any, where Exhibits H and J shall be found to be identical." The master reported, among other things, the following conclusions of

fact: "Complainant's Exhibit H and defendant's Exhibit J are identical in the following particulars of plan, viz.: There are compilations of tables or lists which show how to ship goods from New York to any place that is a railroad station, or post office in the United States or the dominion of Canada, by railroad, express line or freight line. They are identical in the following particulars of arrangement, viz.: They are in two general divisions, covering the United States and the dominion of Canada. In the first general division are title pages, publisher's notice and explanations, list of railroads in the United States, list of places in the United States, but not arranged in identically the same way. In the second general division are lists of places in the dominion of Canada, alphabetically arranged. Shipping directions upon the last leaf of both. They are identical in the following particulars of combination of materials: The list of railroads in each division are arranged alphabetically, with numbers for reference set against each name, but not the same numbers. In the list of places are combined the name of the place; the county in which it is; the railroad, by reference number, upon which it is; if it be on a railroad, the name or abbreviation thereof; the express company by which it may be reached; the names of postoffices are in roman type; the names of railroad stations, not post offices, are in italic type; money order post offices are marked by a star; county seats, in some cases, are marked by letters c. h. These combinations are made in the second division alphabetically, for the whole dominion. Upon each page of the body of the work, in both divisions, are given explanations of the signs used, and references to other pages of the work. They are identical in the following particulars of their method of imparting information: They give information of the county and state in which any given place is located, the express lines from New York by which it may be reached, and the railroad, by reference numbers, on which it is a station, if it be on a railroad, by arranging the names and numbers in corresponding columns, but not in identically the same form of arrangement. They give information whether a place is or is not a money order post office, by placing a star against the names of places that are such post offices. They give, in some cases, information whether places are county seats, by placing the letters c. h. against their names. They give information whether a place is or is not a railroad station as well as a post office, by putting the names of such stations as are not also post offices in italic type. They give generally, but not in all cases, a reference, upon each page of list of places, to other pages where other directions how to ship goods for those places are given. They give information about freight lines, grouped by states." The master further reported as follows: "All the particulars of

plan, arrangement, combination of materials and. method of imparting information, as above described by him, are not found in any one of the prior publications set up in the answer. In no one of said prior publications is there the identical plan above described by him, and found in the plaintiff's Exhibit H, and the defendant's Exhibit J. In one of said prior publications, viz.: Teller's American Shipping Express Guide, there is the same general arrangement as described by him and found in plaintiff's Exhibit H and defendant's Exhibit J. Many of such prior works contain lists of places arranged alphabetically, as in Exhibit H, but in none are there the same lists or the same arrangement of places in the list. Some of said prior works contain lists of railroads alphabetically arranged, with reference numbers, others contain lists of places, combining name of place, county, railroad (but not by reference numbers) and express, but, in some cases, the express line on which it or its nearest railroad station is located is not, as in the plaintiff's book, the express that carries goods from New York. Some of said prior publications convey the same information conveyed by the plaintiff's work, but by a different method. In some of the prior publications money order post offices are, as in the plaintiff's work, indicated by a star or some equivalent sign; in some a county seat is indicated by the letters c. h. Many of the prior publications contain list of places, of post offices, of railroads, of freight lines, alphabetically arranged. Many group their information by states. These prior publications were published for some part or parts of the same general purpose as the complainant's Exhibit H and the defendant's Exhibit J, and contain some part or parts of the same information, but not in the same form or arrangement or combination of materials, in any case."

To this report of the master various exceptions were taken, and the case was brought to a hearing upon such exceptions, and the pleadings and proofs, at the same time. Owing to the restricted form of the order of reference, the master's report does not cover all the questions of fact necessary for a disposal of the case. As far as it goes, however, upon the evidence, it must be deemed conclusive of the facts stated therein. The other questions of fact, and the questions of law applicable thereto, are now to be determined by the court.

In regard to the exceptions, it is sufficient, therefore, to say, that I see no reason to differ with the master as to any of his conclusions of fact, and none of the exceptions appear to be well taken.

In disposing of the questions raised by the answer, it will be convenient to notice, first, the point made by the defendant, that the plaintiff's work cannot be a subject of copyright, because not within the scope of the provision of the constitution which grants the power "to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries." Upon this point, it is sufficient to say, that I am unable to find a substantial distinction between the plaintiff's works, and those works that in other cases have been adjudged to be within the scope of the constitution and the copyright laws, such for instance as maps, "The Advertiser's and Collector's Chart," hereafter referred to, "The Ladies' Chart for Cutting Dresses and Basques for Ladies." Drury v. Ewing [Case No. 4,095].

I next notice the point made, that the plaintiff has not produced proper evidence to show himself the author or proprietor of his works, within the meaning of the copyright laws. The argument here is, that no one but the plaintiff himself can legally establish the fact that the plan, arrangement and combination of his works originated in his brain. But, there is evidence showing that the plaintiff, by his own labor and that of persons employed by him, and working under his direction, gathered together from various original sources the material of his book; that the manuscript in which the matter was arranged was partly in his handwriting; and that from the manuscript the work was printed for him at his expense. It was not necessary that these acts of the plaintiff should be proved by the testimony of the plaintiff. The testimony of any person who saw them done is primary and direct evidence of their having been done, and, in the absence of any testimony to the contrary, established the fact that the plaintiff gathered together the information conveyed by his book, arranged that information as it appears in the book, and caused it to be printed in that form. The acts of the plaintiff thus proved to have been done in preparing his work are those of a compiler. A compiler is an author, within the meaning of the constitution and the copyright laws.

A more important question is raised by the averment in the bill, that the defendant's book, Exhibit J, was copied from the books of the plaintiff. If this averment has been proved, the defendant has infringed upon the plaintiff's copyright; for, it is not to be doubted, that the plaintiff acquired the right to prevent any person from appropriating the fruits of his labor, by making a transcript of his book, without any other skilled labor or expense than that involved in making and publishing the copy, and it is equally true, that a copy so made would infringe upon the plaintiff's copyright, notwithstanding it might appear that colorable alterations had been introduced into the copy, for the purpose of disguising the fact that the work was but a transcript. But, the evidence wholly fails to support the averment that the defendant's book is copied from the plaintiff's books. Notwithstanding the sim-

ilarity between the plaintiff's Exhibit H and the defendant's Exhibit J, which the master has pointed out, it is impossible to find that the only labor expended by the defendant was that of making a transcript of the plaintiff's book. Here, the character and object of the works, as well as their subject-matter, must not be overlooked. When these features are considered, it is very easy to see how two works of this character may be as similar as the master has found these to be, and yet the one not a transcript from the other. The points of similarity found by the master may well have arisen from the character of the publication, the object intended to be served, and the nature of the information sought to be conveyed; and there are many points of difference. The master was not required to report the points of difference between the conflicting publications, but many such are obvious from an inspection of the two books, plaintiff's Exhibit H and defendant's Exhibit J. Among other differences may be noticed the general appearance of the books, and their title pages. In these respects they are so dissimilar, that it would be impossible for any intelligent person to mistake the one for the other. Evidently, there was no effort on the part of the defendant to impose upon the public, by issuing a book similar in appearance to the plaintiff's books. The two books do not convey the same information. To notice one instance, the defendant's list of railroads, under the letter A, contains 25 main lines, while the plaintiff's list, under letter A, gives but 14 lines. The lists of railroads are not identical in the names given. The defendant, in his table, gives the starting point and termination of each railroad, with its length, while the plaintiff's table gives no such information. The plaintiff arranges his list of post offices and railroad stations for each division alphabetically, while, in the defendant's book, post offices and railroads are arranged alphabetically, by states. This is a very substantial difference, sufficient, I apprehend, in some cases, to determine a choice between the two books. In the plaintiff's books, the information respecting freight lines is given in a place by itself, to which reference is made on each page of the table. In the defendant's book, information of the same character, but not the same information, is conveyed by inserting in the tables a list of reference numbers, by which reference is made to certain freight lines given at the bottom of each page of the tables. The directions for shipping freight are wholly dissimilar in the two books. The method of numbering the railroads is not the same in both books, nor are reference numbers used according to the same system. According to the system of the plaintiff's books, each main line of railroad is given its reference number, and to each line that is a branch of a main line, is given the number of its main line, with a "superior" number attached thereto, whereby it is indicated that the line is a branch of such main line. In the defendant's book, both main line and branch lines of said roads are numbered continuously. These are not mere colorable differences, made for the purpose of concealing a literary piracy, but they are substantial, and forbid the conclusion that the defendant has copied the plaintiff's books. Moreover, there is direct evidence, uncontradicted, showing that the defendant's book was compiled by him from original sources of information, by the exercise of labor and skill of his own, and the expenditure of his money, and was not made by transcribing from the plaintiff's book the information there collected.

In regard to the defendant's use of reference numbers attached to a list of railroads, and set opposite the names of towns, in the list of towns, to indicate the railroad by which that town can be reached, I think it may properly be inferred, from the facts proved, that the use of this method in the plaintiff's book, Exhibit H, suggested to the defendant its use in his book, Exhibit J. But it is not sufficient to show that it may have been suggested by the plaintiff's work. Emerson v. Davies [Case No. 4,436]. It must also appear that it was new and original with the plaintiff. Here the contrary appears, for the same system is found in actual use, in connection with a list of railroads, in "The Travellers' Official Guide," published in 1871, defendant's Exhibit 10.

Upon the evidence, therefore, it cannot be held that the defendant's book is a copy of the plaintiff's books. within the meaning of the copyright laws. In such cases, each new compilation, where it is the result of labor devoted to gathering from original sources, and to arranging in convenient form, facts open to be published by any one, is a new work. The one compiler is as much entitled to the fruit of his labor as the other to the fruit of his, and both are, by the copyright laws, protected in an equal degree against the appropriation of that labor by one who does not compile but only copies.

Works of this character appear to me to stand upon very much the same footing with maps, of which it is said, in Emerson v. Davies [supra], by Story, J.: "A man has a right to the copyright of a map of a state or county which he has surveyed, or caused to be compiled from existing materials at his own expense of skill or labor or money. Another man may publish another map of the same state or county, by using the like means or materials and the like skill, labor and expense. But, then, he has no right to publish a map taken substantially and designedly from the map of the other person, without any such exercise of skill or labor or expense." What has been already said disposes of the charge in the bill that the defendant's book is copied from the plaintiff's books.

The remaining charge in the bill, demanding attention, is, that the defendant's book is, in all respects, identical with the plaintiff's books in the plan, combination, arrangement and method of imparting the same information, and for this reason is an infringement on the plaintiff's copyright. It appears, by the master's report, that the defendant's book is identical with the plaintiff's books in certain particulars of plan, combination, arrangement and method of imparting information; and it also appears, from the proofs, that, in certain other particulars of plan, arrangement and method of imparting information, the books are wholly dissimilar in the information they convey. Now, it may be conceded that there is nothing in the character of the plaintiff's work to make it an exception to the rule that has been declared in cases respecting other compilations, that "every author of a book has a copyright in the plan, arrangement and combination of his materials, if it be new and original in substance." But, before the plaintiff can invoke an application of this rule, he must make it appear that his book exhibits a substantially new and original system of arranging material of that character, which system was his own invention. This he has not been able to do. Not every method of arranging material requires invention. No invention, in the legal sense, would be required to arrange a list of names in the reverse order of the alphabet, or to indicate a relation between two things by placing them in corresponding columns, or to state a fact in a short way, by attaching a star to a name, or adding the letters c. h. thereto, or by using different styles of type. None of the methods of imparting information employed by the plaintiff, which the master has found also employed in the defendant's book, involve invention. Nor are any of them new and original with the plaintiff. In this respect the plaintiff's case very much resembles the case of Lawrence v. Cupples [Case No. 8,135], decided by Judge Shepley. There, the plaintiff issued a monthly chart, published each month, and containing information in regard to a certain class of debtors, which information was conveyed by means of a list of the debtors arranged alphabetically, with the address of the debtor, the address of the creditor, the amount of the claim, and, in some instances, the discount at which the claim would be sold for cash, arranged in tabular form. The charge was, that the defendant, in a work of similar character, had adopted the plaintiff's plan in arranging the names and residences of debtors and creditors, and in stating the amounts, and in the object and purposes of said arrangement. But the court held, that, although the plan or arrangement of a book may be secured to the author, if it be the product of his own genius, there did not seem to be anything in the plaintiff's work which possessed any such novelty of

plan or arrangement as would preclude any other person from making and publishing, from his own independent sources of information, similar lists. I am of the opinion that the same conclusion must be reached in regard to the work of the plaintiff. The plan, arrangement and method adopted by the plaintiff, as well as by the defendant, is such as would naturally, if not necessarily, occur to any intelligent person intending to impart information of this character. These methods spring from the necessities of the case and the character of the information intended to be conveyed; and their use by the defendant is not sufficient to constitute his book a servile imitation of the plaintiff's books. Notwithstanding the similarity of the methods visible in these books, it still remains true, that the defendant's book "is the result of his own labor, skill and use of common materials and common sources of knowledge, open to all men, and the resemblances are either accidental or arising from the nature of the subject." Story, J., in Emerson v. Davies [Case No. 4,436].

But, it is said that the plaintiff was the first to combine the methods employed by him to convey his information, and is, therefore, the author of a new combination of methods, to which he has the exclusive right. It is true, that, in no single prior publication is there to be found in use all the methods of conveying information employed by the plaintiff in his work, but each of those methods has been used before, and none are original with him. What he has done is to aggregate various methods, which, when aggregated, stand now collected for the first time on a single page. This is not like the case of the arithmetic (Emerson v. Davies [supra]), where a plan of lessons, an arrangement of tables to illustrate those lessons, a gradation of examples to precede each table, in such manner as to form, with the table, a peculiar appearance of the page and an illustration of the lessons, by attaching to each example unit marks representing the numbers embraced in the example, were so combined as to constitute, in the aggregate, a new method of illustrating the subject of arithmetic. Here, there is no new combination of material, constituting a new and original work. There is a use, perhaps, a combination, of old methods, but it can scarcely be said that a new method of illustrating the subject has been produced. I say perhaps, because it may be doubtful whether there is any just analogy between the combination of methods made by the plaintiff and a patentable combination of elements in a machine. Besides, in regard to patentable combinations even, it is said, that "merely bringing old devices into juxtaposition and then allowing each to work out its own effect, without the production of something novel, is not invention." Hailes v. Van Wormer, 20 Wall. [87 U. S.] 353.

Again, if the use of the old methods selected

by the plaintiff makes him the author of a new and original combination of materials, and hence the author of a new book, the defendant's position is the same; for, he has not selected the same methods. His combination is, therefore, different from that of the plaintiff, not colorably, but substantially, different, and the result a work new and original with him, to which he acquired as much right as did the plaintiff when he adopted, for instance, several methods used in the prior work of Teller. To hold, that, in any such case, an exclusive right can be acquired to the combination of methods employed, would be to prevent any improvement in books of the character.

My conclusion, therefore, is, that, for the reasons above stated, the plaintiff has failed to show any infringement upon his rights by the defendant, and his bill must, accordingly, be dismissed, with costs.

[See preceding case (No. 2,126).]