### THE HUGHES BROTHERS AND BANGS, NO. 49.

#### (Circuit Court of Appeals, Second Circuit. November 21, 1904.)

#### No. 48.

SALVAGE—RESCUE OF PROPERTY—TOWAGE.

For towing a scow picked up while merely drifting about the harbor in the morning in a moderate wind, when the tide was beginning to flood, and when a tug had been sent for it by its owners, compensation will be allowed on the basis of a very low order of salvage, and not on the basis of rescue of property at sea in imminent peril of loss or deterioration.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Salvage, §§ 80–83.

Salvage awards in federal courts, see note to The Lamington, 30 C. C. A. 280.]

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here on appeal by claimant from a decree awarding as salvage the sum of $2,500 against its scow Hughes Brothers and Bangs for services rendered by libelants in towing said scow from a point about 150 feet northeast of the lighthouse on Dry Romer Shoal to Long Dock, Staten Island.

W. S. Montgomery, for appellant.

James Forrester, for appellee.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

PER CURIAM. We are unable to concur in the opinion of the District Judge that the scow was in extreme danger at the time when the services in question were rendered. She had been drifting about in the Lower Bay on a winter morning, when there was only a moderate wind and the tide was the beginning of flood or slack water at the last of the ebb. The claimant knew that the scow had gone adrift, and a tug sent by it to pick her up met her in the Narrows in tow of libelants' tug. The evidence fails to show the draught of the scow, or that she would have been likely to suffer injury, if she had continued to drift about until her tug arrived. It is not satisfactorily shown that the scow would probably have been damaged if she had grounded on Dry Romer with the weather conditions prevailing on that morning. She was inside the harbor, and she was not derelict. Her night watchman testifies that in response to the offer of the tug to take him in tow he only asked to be towed inside the lighthouse.

This, then, was not a case of "rescue of property at sea in imminent peril of loss or deterioration." Cohen's Admiralty Law, 37. It was, however, an arduous service, because of the very exceptional amount of ice in the bay and the bitter cold weather. Two hawsers were broken on the tug, and the mate, Sullivan, had his hands frozen and one of them sprained, and was confined in consequence to the hospital for five days. We think the towage, if it can be considered a salvage service at all, was of a very low order, that the salvors are only entitled to a low grade of salvage allowance, and that $150 an hour for the time occupied would give them ample compensation. It appears that the libelants' tug encountered the scow at between 4 and 5 o'clock in the morning, and reached Long Dock, Staten Island, with her at about 11:30 o'clock, for which $1,000 may be allowed, $100 of which should be paid to the injured mate.

The decree of the District Court is modified, with costs, and the cause is remanded to that court, with instructions to enter a decree in conformity with this opinion.