DE ALDAMIZ v. TH. SKOGLAND & SONS et al.*

(Circuit Court of Appeals, Fifth Circuit. March 17, 1927.)

No. 4882.

1. Salvage ⬤30—$750 for services to stranded vessel valued at $60,000, by vessel valued at $150,000, held inadequate, and increased to $5,000.

Salvage award of $750 for services rendered vessel valued at $60,000, stranded in exposed shallow waters in hurricane season, by vessel valued at $150,000, held inadequate, and will be increased to $4,000 to owners and $1,000 to master and crew, where other wrecking facilities were not available, and there was real danger that stranded vessel would be a total loss, and only skillful maneuvers by salvaging vessel kept her from also becoming stranded.

2. Salvage ⬤24—Salvage awards should be sufficiently large to encourage salvors to take risks involved.

It is the policy of admiralty law to make salvage awards sufficiently large to encourage salvors to take the risks involved.

3. Salvage ⬤51—Trial court's failure to give due weight to danger from which stranded vessel was rescued presented proper case for increasing salvage award.

Where trial court did not give due weight to degree of danger from which stranded vessel was rescued in making salvage award, a proper case for increasing the award was presented.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Louis H. Burns, Judge.

Libel by J. B. De Aldamiz, master of the steamship Rajah, against Th. Skogland &

*Rehearing denied April 15, 1927.

Sons and others. From a decree for libelant in an insufficient amount, libelant appeals. Modified and affirmed.

Henry P. Dart, Jr., of New Orleans, La. (Dart & Dart, of New Orleans, La., on the brief), for appellant.

John D. Grace, M. A. Grace, and Edwin H. Grace, all of New Orleans, La., for appellees.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. This is a salvage suit. The libelant appeals on the ground that an award of $750 made by the district court is grossly inadequate. The libel was filed by the master of the steamship Rajah on behalf of its owners, officers, and crew, against the steamship Per Skogland.

[1] On Thursday, October 23, 1924, the Per Skogland, bound for Frontera, Mexico, arrived off the bar of that port. As there was no cargo on board and the machinery was aft, the vessel was drawing 2 feet forward and 11 feet 4 inches aft. There being a depth of only 9 feet over the bar, the forepeak tank and the chain locker were filled with water, in order to increase the draft forward and reduce it aft. After three unsuccessful attempts to cross the bar, more water was put into the forepeak tank, and with the ship drawing 3 feet 6 inches forward and 9 feet aft, a fourth attempt was made on Friday afternoon; but the ship went aground, and, as the bow swung around with the current away from the bar, drifted towards the beach on the outside. On Friday night both anchors were let go, with enough chains to enable them to take hold; but the ship continued to drift slowly inshore over the sand and mud bottom throughout Saturday and until some time on Sunday, when the anchors held. After the ship stopped drifting, she lay until rescued abreast against the seas, in water from 4 to 6 feet deep. At a distance of 1,000 feet the water was 10 to 12 feet deep, but that depth was not straight ahead, and could not be reached, except by swinging the bow.

On Saturday the Per Skogland's master sent out wireless calls for help, and got into communication with the Rajah, which was discharging cargo in the port of Frontera. The Rajah finished unloading on that day and agreed to render assistance on Sunday, but on account of a norther, which caused rough water on the bar, was unable to go outside until Monday. By that time the wind had changed and the sea was practically calm. The Rajah arrived outside on Monday at

about 1 p. m., anchored 1,000 feet away, made fast 1,200 feet of her own manila hawser, and had the Per Skogland safely afloat within 1 hour and 40 minutes. The actual time of pulling did not exceed half an hour.

There were no tugs in Frontera, or nearer than Tampico, 300 miles away. Two other steamships were anchored outside, taking cargo, near where the Per Skogland was aground; but they did not render any assistance, probably because they drew too much water. The master of the Per Skogland testified that a third steamer, the Sinaloa, arrived off the bar Sunday night and offered assistance, but that he did not accept her services because he was expecting the aid of the Rajah. He further testified that on Monday morning the Sinaloa crossed the bar into the harbor of Frontera, and that she appeared to be about the same size as the Rajah. This witness had continued to call for help after the Rajah had agreed to go to her assistance, and it is at least doubtful whether he would have refused help from any ship capable of giving it. At any rate, there is no adequate proof that the Sinaloa was either able or willing to render assistance. In the vicinity of Frontera, severe storms, or "northers," are of frequent occurrence from October to March. The value of the Rajah was $150,000, and of the Per Skogland $60,000.

We are of opinion that, under the settled law relating to the amount of a salvage award, as declared in The Blackwall, 10 Wall. 1, 19 L. Ed. 870, and innumerable other cases, the amount of the decree should be materially increased. Although the amount of labor involved was small, the salvage service was rendered as promptly as possible under the circumstances. The Rajah was skillfully maneuvered by her officers and crew, who took the precaution to keep her out of shallow water, where she, too, would go aground and become incapable, possibly of saving herself, and certainly of promptly salvaging the Per Skogland. Only careful handling kept her from being exposed to very considerable danger. There was real danger that the Per Skogland would become a total loss. It is idle to argue that a ship aground in shallow water on a sea beach, exposed to wind and wave in the hurricane season, is in a safe place. That danger was enhanced by the lack of tugs equipped to render salvage service, though there was also the chance that a steamer able and willing to do so might come to the rescue. The evidence is far from being convincing that any of the other three ships in the vicinity of Frontera was capable of sav-

ing the ship in distress, or was willing to take the risk of doing so.

[2, 3] It is the policy of the admiralty law to make salvage awards sufficiently large to encourage salvors to take the risks involved. As it appears to us, the District Judge did not give due weight to the degree of danger from which the Per Skogland was rescued, and therefore a proper case for increasing the award is presented. The Santa Rita (C. C. A.) 281 F. 760. The salvage service in this case is comparable to that in The Craster Hall (C. C. A.) 213 F. 436, and in Savannah Sugar Refining Corporation v. Atlantic Towing Co. (C. C. A.) 15 F. (2d) 648. In the first of these cited cases, the value of the property saved was approximately $500,000, of the property employed in the salvage service was $155,000, and the amount of the award was about $25,000. In the other case, the value of the property saved was $400,000, of the property engaged in salvage service $250,000, and the amount of the award was $15,000. In neither of those cases was the property saved exposed to greater danger than was the Per Skogland, and in each of them ample wrecking facilities were easily and readily available, whereas in this case they were not.

We are of opinion that there ought to be an award of $4,000 to the owners of the Rajah, and of $1,000 to the master, officers, and crew, in proportion to their wages, or a total award of $5,000.

The decree of the District Court is modified accordingly, and, as so modified, is affirmed.