## THE VIKING NO. II.
## THE NEW YORK CENTRAL NO. 33.

### No. A—11070.

District Court, E. D. New York.
July 18, 1930.

Otto & Lyon, of New York City (Edward F. Platow, of New York City, of counsel), for libelant.

Bigham, Englar, Jones & Houston, of New York City (Charles W. Hagen and Bertram E. Driscoll, both of New York City, of counsel), for respondent.

GALSTON, District Judge.

This is a suit in admiralty brought by the owner of the Viking No. II, on its own behalf and on behalf of the master and crew of the tug, for salvage.

On February 10, 1928, the Diesel tug New York Central No. 33 was made fast alongside the steamship Crampton Anderson at Stapleton, Staten Island. Some time between 10 and 11 p. m., while all of the crew of tug No. 33, save its engineer, were aboard

the Crampton Anderson, it was observed by somebody on the Crampton Anderson that tug No. 33 had broken adrift. On getting such word, Capt. Van Schaack jumped from the deck of the steamer, a distance of about twenty feet, to the deck of the tug. Those on board the Crampton Anderson saw that he was seriously injured. Capt. William Fennecken of the libelant's tug was also on board the Crampton Anderson, and as soon as he saw the tug No. 33 break adrift and Van Schaack jump and injure himself, and noted that no one was in the pilot house of the tug No. 33, he ran to his own tug, boarded her, and went in pursuit of the tug No. 33.

Thus the uncontroverted facts are that the New York Central tug went adrift; that at the time there was no one on board of her save the engineer, who was not in the pilot house; that her captain in jumping from the deck of the steamer to his own tug severely injured himself; that the Viking No. II promptly cast adrift and went in pursuit of the wild boat.

Controversy arises, however, about other circumstances. It is contended on the part of the claimant that the engineer Murray was duly qualified and competent to handle the tug No. 33 without assistance; that, although Capt. Van Schaack was seriously injured, he crawled to the engine room door and instructed engineer Murray to take charge of the tug; that Murray immediately went to the pilot house and brought the tug around to come up alongside of the ship or to land at the dock at Stapleton. It is also contended by the claimant that two other members of the crew of tug No. 33 got aboard the Viking No. II when she went in pursuit of tug No. 33.

All of the foregoing contentions of the claimant are denied by Capt. Fennecken of the Viking No. II. He said that when he boarded tug No. 33 there was no one in the pilot house, and that he was the only person who boarded the tug No. 33 when the two tugs came into contact. He contends that Murray, the engineer, went into the pilot house and followed his (Fennecken's) instructions, and not Van Schaack's, and that, although Murray took the controls, it was he (Fennecken) who held the wheel and navigated the boat and brought her to Pier No. 11 at Stapleton, Staten Island, so that the injured captain of tug No. 33 could be taken to the Marine Hospital located in that vicinity.

Obviously the two stories are in hopeless conflict without possibility of reconciliation. However, to determine the essential issue as to whether a salvage service was required and performed, it is not necessary to make a finding as to whether Fennecken was accompanied by the two members of the Central's crew at the time he boarded the tug No. 33. It is necessary to know whether the boat was running wild and in danger at the time the Viking No. II went in pursuit and reached her, and whether Murray, unaided, could have brought the boat to a safe berth.

I find that the tug No. 33 was in danger at such time. Even Murray, the engineer, testified that when he entered the pilot house of tug No. 33, the boat was headed toward the Bay Ridge shore, was proceeding under half speed, and at that time was about five hundred feet from the steamer. When the two tugs met they were between six and seven hundred feet away from the steamer. One witness estimates the distance as between seven and eight hundred feet. So that a reasonable inference is that, when Fennecken boarded the tug No. 33 she was not under control. Moreover, judging from the difficulty that the Viking No. II had in coming alongside the Crampton Anderson on her return for the remaining members of the crew of tug No. 33 (two lines snapped), I think it extremely doubtful that Murray, unaided, could have made a safe landing either at the steamer or at Pier 11.

The service rendered by the Viking No. II therefore falls within the definition set forth in McConnochie v. Kerr (D. C.) 9 F. 50.

■ To determine the amount of salvage to be awarded in this case is, however, one of considerable speculation. The tug No. 33 was lighted at the time that she went adrift, and, though she was headed for the ship's channel and open water and with possibility of collision, there is no certainty that collision would have resulted, and there is the probability that the engineer, unaided, could have got her under control. Essentially, therefore, the service should be viewed in the light of an assistance to a port or haven. Her stipulated value was $165,000.

I have been referred by the libelant to De Aldamiz v. Skogland & Sons (C. C. A.) 17 F.(2d) 873, and to Harris v. New York Central Railroad Co. (D. C.) 18 F.(2d) 141; and by the claimant to The Henry Maurer (D. C.) 215 F. 238, The Angler (D. C.) 271 F. 18, and Hughes Bros. & Bangs No. 49 (C. C. A.) 135 F. 746.

At most the elapsed time between the beginning of the service and the termination of it and return to the original berth by the

Viking No. II was two hours. I think an award of $500 should be made to compensate the tug, the captain, and her crew.

Settle decree on notice.