## THE DR. GEORGE J. MOSER, Inc.

## THE WILLIAM ROCKEFELLER.

### No. 159.

Circuit Court of Appeals, Second Circuit.
Feb. 1, 1932.

Single & Single, of New York City (Thomas H. Middleton, of New York City, of counsel), for appellant.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Edwin S. Murphy, and William H. McGrann, both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

## PER·CURIAM.

The libelant was the owner of a tug, and filed its libel to recover for salvage services to the steamer William Rockefeller, which caught fire at her wharf at Constable Hook, N. J., on August 9, 1929. The Rockefeller was a tanker, some of whose tanks had been discharged, and she was for this reason more inflammable than if they had all been full. At about 7 o'clock in the morning one of her empty tanks exploded, and she caught fire. Several tugs nearby came to her help, the Standard Oil No. Nine, the Standard Oil No. Nineteen, the Pointer, and the Card. The Pointer and the No. Nineteen went to the ship's stern, the No. Nine to her bow, the Card amidships on the starboard side, for the Rockefeller lay bows in, with her port side to the wharf. The libelant's tug, Moser, arrived at this time, having delayed to pick up a man who had jumped overboard or been blown from the deck. Finding that the No. Nineteen had put a hawser to the starboard quarter of the ship, she went alongside and fastened to her. The No. Nineteen had on board a seriously injured man, whom she wished the Moser to take to a Staten Island Hospital across the Kill, but for some reason not altogether clear he was not moved for twenty minutes. The Moser's master says that it took so long merely to move him, and the master of the No. Nineteen was not called. At any rate, in the meantime the Moser was pulling alongside the No. Nineteen to get the ship out into the stream; for, although the fire could be better controlled by chemical extinguishers on the wharf, it was apparently feared that she might explode another tank and injure adjacent property.

Finally the injured man was shifted to the Moser, which then crossed the Kill and put him into an ambulance. When she got back, the ship was in midstream off St. George's, surrounded by many tugs which had come from all directions, among them a fire boat of the city. The Moser went alongside to starboard about midships, and played her hose upon the deck as directed by the mate of the No. Nine, who was on the ship's bridge. All the tugs kept contact with her and finally beached her at Bay Ridge flats, where the fire was completely put out and the plates cooled. The Moser stood by until about a quarter to 10, having been one of sixteen tugs, two fire boats, and a United States cutter, which had at one time or another taken part in the operation.

The Card and the Moser sued by separate libels; the judge allowed $5,000 to the Card and nothing to the Moser. The salved value of the Rockefeller and her cargo was about $1,250,000; the Moser was worth $25,000.

■■ Salvage must not of course be made merely an opportunity for officious interlopers; a vessel in distress is not to be killed by kindness, particularly that of interested friends. And yet it is hard to say that, when an oil ship is on fire, she will not profit by a deluge of water from many nozzles. At least she can turn away those which she does not want, and, if she allows them to do what they can, she is scarcely in a position to complain of their services. While we are not disposed to rate highly the benefit to this ship, it appears to us too strict to turn away the libelant with empty hands. The tug helped to get her away from the wharf, which every one thought best, for we cannot suppose that she and the No. Nineteen were blindly pulling against her fasts. Again, after she came back, she lent a hand, and did what she was told to do from the ship's bridge. These were not very substantial services, but they were something, and that too at some peril to herself. It appears to us, in view of the large values at stake, that she is entitled to an award.

■ A more doubtful question is whether her conduct in regard to the wounded man should disqualify her altogether. It seems to us likely that the two masters fell into a dispute as to who should leave the quarry in the interest of the unhappy seaman, who is spoken of as bleeding to death, though it does not appear that in fact he died. But it was surely rather the duty of the tug which had him on board than of the Moser to take care of him. In the contest in inhumanity, if there was one, the No. Nineteen has the unenviable victory. Besides, her master was not called by the claimant in the employ of whose subsidiary he was; and we are entitled to accept the Moser's story without contradiction. On the whole we feel disposed to make a small award, which we fix at $2,000.

■ The libelant can take nothing under the statute (section 729, tit. 46, U. S. Code [46 USCA § 729]). This gives to salvors of life a share in the award of those who save property. It does not impose a lien upon the salved vessel because of the rescue of her crew. So far as the Moser has any claim under it, it is therefore against the awards of those whom she set free to help the ship.

In this case the tug especially subject to such an apportionment would be the No. Nineteen. As she is not before us, and we do not know what was allowed her, we cannot deal with that question. The same applies to the awards of any other vessels which may have got any.

Decree reversed; $2,000 awarded.