Richard L. PHELAN

v.

John V. MINGES.

No. 56-2.

United States District Court
D. Massachusetts.

Feb. 17, 1959.

Thomas J. Colbert, Frederick D. Vincent, Jr., Boston, Mass., for plaintiff.

Edwin R. Trafton, Boston, Mass., for defendant.

FRANCIS J. W. FORD, District Judge.

This is a libel in admiralty to recover salvage compensation for the alleged saving from peril of the sailing yacht Javelin owned by respondent.

On August 31, 1954, the Javelin was tied up at a rented mooring in Marblehead Harbor. On that day the area was struck by hurricane Carol which was marked by violent winds and unusually heavy seas. About 3:00 p. m. on that day during the storm the Javelin and another vessel, the Lovely Lady, were seen drifting in a northeasterly direction out of the harbor. Their progress was followed by the respondent and several other observers from points on the shore. They were finally seen to come to a halt in the vicinity of Eagle Island about a mile and a half from the harbor entrance and thereafter, while it was still light enough to observe them, they did not appear to move.

Eagle Island is a small island described by witnesses as being just a rockpile rising above the surface of the water. It is surrounded by an area of rocky shoals and shallow water extending from some distance to the north and northwest. Moving to the southwest and then south of the island, this shallow water area extends a much shorter distance from the island.

About four o'clock that afternoon one Hood, a boat yard proprietor, went out in his launch with a companion and inspected the two vessels. The vessels were then about 300 feet off Eagle Island in a southwesterly direction, over water about 20 feet deep. The Javelin had a mooring line out which appeared to be taut and intact and both vessels appeared to be holding well even though a stiff breeze was still blowing and the seas were still heavy. Except for wrapping some canvas around the anchor line of the Lovely Lady where it had begun to chafe, Hood left the vessels as they were.

About 8:00 p. m. respondent made arrangements by telephone with the Price Yacht Yard to have his boat brought back into the harbor in the morning. Early on the morning of September 1, as soon as there was sufficient light, he observed the two vessels from his home, about a mile and a half from Eagle Island. They were apparently in the same position as they had been on the previous evening.

Early on the morning of September 1 libelant and his brother, who had been up all night bailing water from a storm-flooded house, drove around the shore of Marblehead Neck to observe the damage caused by the storm. From a point near the lighthouse on the Neck they observed two objects near Eagle Island which they could not clearly make out but which seemed to be boats. They returned home and libelant took some tools and went out alone in his father's boat. He reached the vicinity of Eagle Island about 7:00 a. m., which was shortly before the time of low tide. He testified that he found the Lovely Lady southwest of the island about 100 feet from the nearest visible rock and the Javelin another 100 feet southwest of the Lovely Lady. Each of the boats was being held by one line. At first he testified that these lines were not taut but later said that they were under tension and that the boats were being heaved about by heavy swells in a rough sea.

Libelant boarded the Lovely Lady (damaging his father's boat when it came in contact with a broken boom extending overboard from the Lovely Lady), succeeded in starting its engine, pulled in its anchor, and brought it up to the Javelin. He succeeded in attaching a line to the Javelin, found he could not pull in the mooring which was holding the Javelin and cast the mooring line overboard. He then brought the Lovely Lady into the harbor under its own power, towing the Javelin and his father's boat. Respondent, who had seen the vessels coming in, boarded the Javelin from a launch inside the harbor and was towed by libelant to a suitable mooring.

There was some conversation between libelant and respondent when respondent took over his boat, but the testimony of the parties is in conflict as to whether libelant made any claim for salvage at this time. At any rate, later on the same day written notice of libelant's claim was sent by his attorney to respondent.

828

The Javelin suffered some damage at some time during the storm but at no time was there any injury to its bottom.

 Salvage service is that "which is voluntarily rendered to a vessel needing assistance, and is designed to relieve her from some distress or danger either present or to be reasonably apprehended." McConnochie v. Kerr, D.C., 9 F. 50, 53. It is an essential element that the vessel must have been in a real peril. The danger need not be imminent or absolute, but at least the vessel should, at the time the services are rendered, be in a situation where there is at least reasonable apprehension of injury or destruction if the services are not rendered. If there is no danger, there is no need of assistance and any services rendered do not confer any benefit on the vessel. A person rendering such unnecessary service is not a salvor but an opportunist or an officious intermeddler. The Dr. George J. Moser, Inc., 2 Cir., 55 F.2d 904; Cuttyhunk Boat Lines v. The Pendleton, D.C., 119 F.Supp. 608; The Choteau, C.C., 9 F. 211.

There is no doubt that for some time during the progress of the hurricane, while the Javelin was dragging out to sea, there was reasonable danger of injury or destruction. But this danger was already past when the vessel finally came to rest some distance away from Eagle Island and the surrounding shoals. At 7:00 p. m. on August 31, although there was still wind and rough sea, the vessel was holding on its mooring. On the morning of September 1 the storm was completely over. The day was clear. In spite of libelant's testimony as to rough water and wind, it must be found on the testimony of numerous other witnesses that there was at most a light breeze, and that the sea was smooth with only a moderate and normal ground swell. The Javelin was in a position close to dangerous waters. It was perfectly safe, however, while it remained where it was and it was not then drifting but was still securely moored. Under the actual conditions of sea and weather there was no basis for any reasonable apprehension that it would be dragged across the 200 feet of water separating it from actual danger. Consequently there was no need for the service rendered by libelant in towing it back into the harbor and libelant is not entitled to recover compensation for salvage.

An order will be entered dismissing the libel.